# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

IRA ALSTON,

        Plaintiff,

v.

CAROL CHAPDELAINE, CAPTAIN RIVERA, SCOTT SALIUS, ANGEL QUIROS, LYNN MILLING, SCOT SEMPLE, C.S. GRIGGS, and MONICA RINALDI, in their individual and official capacities,

        Defendants.

Civil Action No.
3:15 - CV - 434 (CSH)

FEBRUARY 10, 2016

## RULING ON PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND THE COMPLAINT AND FOR EMERGENCY RELIEF

**HAIGHT, Senior District Judge:**

## I.  INTRODUCTION

*Pro se* plaintiff Ira Alston, currently incarcerated at the Northern Correctional Institution ("NCI") in Somers, Connecticut, brings this civil rights action pursuant to 42 U.S.C. § 1983 against various employees of the State of Connecticut Department of Correction ("DOC") (collectively "Defendants").[1] Currently pending before the Court are Plaintiff's motion for leave to amend his

---

[1] Plaintiff brings this action against all named defendants in both their individual and official capacities.  In his original Complaint, he included eight Defendants and now includes eleven. According to Plaintiff, defendants Carol Chapdelaine, Jose Rivera, and Scott Salius were at all relevant times employed at MacDougall-Walker Correctional Institution ("MWCI").  Doc. 10-1, ¶ 4. Chapdelaine was Warden of MWCI, Rivera was Program Unit Manager of the Security Risk Group at MWCI, and Salius was a DOC captain and supervisor.  Defendant Lynn Milling was at all relevant times "Director of Offender Classification and Population Management."  *Id.*, ¶ 5. Defendant Griggs was a counselor, supervisor, and hearing officer for administrative segregation

Complaint [Doc. 10] and Plaintiff's three motions for emergency relief [Doc. 9, 11, 12], all seeking an expeditious determination by the Court as to whether his Complaint and/or proposed Amended Complaint may proceed under 28 U.S.C. § 1915A. The Court addresses and resolves these motions herein.

## II.  DISCUSSION

### A.   Plaintiff's Motion For Leave to Amend Complaint

Plaintiff has moved for leave to amend his Complaint "as of right," pursuant to Rule 15, Fed. R. Civ. P. , and has attached his proposed Amended Complaint to the motion. Under Rule 15(a)(1), "[a] party may amend its pleading once as a matter of course within:  (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

In the case at bar, Plaintiff presented his original Complaint to the relevant prison authority for filing on March 23, 2015 and subsequently moved to file an Amended Complaint on June 15, 2015. Given the fact that three months elapsed between those two filings, Plaintiff's requested amendment falls outside of the 21-day filing period under Rule 15(a)(1)(A). Furthermore, because the Court has granted Plaintiff the right to proceed *in forma pauperis*, and in light of the § 1915A judicial screening requirement, the Complaint has not yet been served upon the Defendants in this action. Therefore, no "responsive pleading or motion under Rule 12(b), (e), or (f)" can be, or has

---

phase hearings. *Id.*, ¶ 6. Defendants Jacqueline Bachan, Ann Cournoyer, and Captain Robles were employees at NCI. *Id.*, ¶ 7. Defendant Angel Quiros was "District Administrator" for the DOC. *Id.*, ¶ 8. Defendants Scott Semple and Monica Rinaldi were Commissioner and Deputy Commissioner, respectively, for the DOC. *Id.*, ¶ 9.

2

been, filed by Defendants.   Accordingly, no responsive pleading or motion has triggered an additional opportunity to amend as a matter of course.

Pursuant to Rule 15(a)(2), captioned "Other Amendments," in all cases other than those when one may amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Under such circumstances, "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Defendants, who have not yet been served and have thus not appeared, have not consented to the proposed amendment.  Therefore, whether to allow the amendment lies within the Court's discretion.

Leave to amend is granted liberally when justice so requires, Fed. R. Civ. P. 15(a)(2).  Such leave should be denied, however,  when the amendment fails to state a claim, *Foman v. Davis*, 371 U.S. 178, 182 (1962).[2]  *See also, e.g.*,  *Hunt v. All. N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)  ("leave to replead where there is no merit in the proposed amendments or amendment would be futile").  Leave to amend must  also be denied if the amendment seeks to add a defendant in violation of the limits on  permissive joinder of defendants under Rule 20(a)(2), Fed. R. Civ. P.  Rule 20(a)(2) provides that permissive joinder of defendants is allowed only if a "right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out

---

[2]  Plaintiff is advised that the test a district court must apply in reviewing a proposed amended complaint is set forth in  *Foman v. Davis*, 371 U.S. 178, 182 (1962) and its progeny. *Foman* specifies that "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"  *See also Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).  Because Defendants have not been served with the Complaint, there is no "undue prejudice" in amending at this initial stage of the proceedings.  There is also no evident "bad faith or dilatory motive" on the part of the Plaintiff in seeking to amend.  Futility is thus the remaining factor to be considered.

of the same transaction, occurrence, or series of transactions or occurrences;" and "any question of law or fact common to all defendants will arise in the action."[3]

In addition, "[i]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants."[4] *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citing, *inter alia,  Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006); *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir.1988)). The Court is thus mindful of its duty to review a *pro se* litigant's complaint with leniency.

"Although a *pro se* litigant should generally be granted leave to amend his complaint 'when a liberal reading of the complaint gives any indication that a valid claim might be stated,' *Shomo v. City of N.Y.*, 579 F.3d 176, 183 (2d Cir.2009) . . . , leave to amend need not be granted where amendment would be 'futile,' *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir.2003)." *United States  v. Brow*, No. 10–1908–cv, 2012 WL 75361, at *2 (2d Cir. Jan. 11, 2012).  *Accord Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999) ("futility is a valid reason for denying a motion to amend . . . where it is beyond doubt that the plaintiff can prove no set of facts in support of its amended claims.").

---

[3] The Court finds no basis for "required joinder" of the newly named Defendants under Rule 19(a), Fed. R. Civ. P.  There has been no assertion that in their absence, "the court cannot accord complete relief among existing parties" or that they claim "an interest relating to the subject of the action" so that "disposing of the action" in their absence would "impair or impede [their] ability to protect the interest" or leave an existing party at "substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed R. Civ. P. 19(a)(1).

[4] Despite extending Plaintiff leniency due to his *pro se* status, the Court notes that he is clearly an experienced litigant, a "frequent filer."  At the present time he has filed fifteen (15) actions in this District, eight (8) of which are currently pending.

In the case at bar, Plaintiff's initial Complaint was approximately 19 pages, attached to a court form entitled, "Pro Se Prisoner Civil Rights Complaint," and set forth § 1983 claims against eight DOC employees.  Doc. 1, at 1-24.  The basis of the claims was alleged retaliation by these Defendants, including placement of Plaintiff "on administrative segregation," due to Plaintiff's "engaging in protected activity such as  filing grievances and/or complaints." Doc. 1, at 7.

In contrast, Plaintiff's proposed Amended Complaint is comprised of 34 handwritten pages, names 3 additional defendants, and contains more than 70 new paragraphs of allegations.  The three additional defendants include "Jacqueline Bachan, Captain Robles, and Ann Cournoyer," who, according to Plaintiff were "at all times relevant to this Complaint . . . employee[s] of the CT DOC" and "assigned or posted at [the] Northern Correctional Institution."  Doc. 10-1, at 4 (¶ 7).  The basis of Plaintiff's claims is once again § 1983, stemming from alleged retaliation against Plaintiff for complaints he made to prison authorities regarding mistreatment he allegedly received and mismanagement of inmates.  Plaintiff has provided additional details and fleshed out allegations he made in his previous Complaint.

Adding the three defendants is permissible under Rule 20(a)(2), Fed. R. Civ. P.,  because the § 1983 claims asserted against them "aris[e] out of the same . . .  series of transactions or occurrences" and involve a "question of law or fact common to all defendants."  In addition, the greater detail Plaintiff has provided in his Amended Complaint comports with the interests of justice.  The sole remaining question is whether  amendment would be futile.

Before accepting the Amended Complaint as the operative complaint, the Court will thus address futility of the amendments as the Court performs its  mandatory initial review pursuant to § 1915A.   As set forth *infra*, if one or more claims in the Amended Complaint survive the initial

review, the Amended Complaint will be deemed accepted and any claims that are "futile" will be stricken.

**B.    Judicial Review under 28 U.S.C. § 1915A**

**1.    Standard of Review**

Whenever a plaintiff requests to proceed *in forma pauperis*, the Court must conduct an initial screening to determine whether the  Complaint sets forth any claims upon which relief may be granted.  28 U.S.C. § 1915A.   Section 1915,  the very statute that authorizes a court to grant *in forma pauperis* status, protects against abuses of that privilege by specifying proper grounds for dismissal.  Section 1915(e) thus mandates that the Court "shall dismiss the case at any time if the court determines that . . . (B) the action or appeal –  (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  *See also id.* § 1915A (b)(1)-(2) ("Grounds for dismissal"); *Johnson v. U.K. Government*, No. 3:07-CV-106 (JCH), 2007 WL 4522458, at *1 (D. Conn. Dec. 18, 2007) ("When a plaintiff proceeds *in forma pauperis*, his lawsuit is subject to dismissal 'at any time if the court determines . . . that the action is frivolous or malicious,' 28 U.S.C. § 1915(e)(2)(B)(i), or if the court determines that the lawsuit 'fails to state a claim upon which relief may be granted.'") (citations omitted).

A complaint is deemed "frivolous" under § 1915 if it "lacks an arguable basis either in law or in fact." *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  *See also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (an action is considered "frivolous" when either: (1) "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the

6

claim is 'based on an indisputably meritless legal theory'") (quoting *Neitzke*, 490 U.S. at 327).

In particular,  "[a] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).  A claim is thus factually frivolous "if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional." *Id.* (internal citations and quotation marks omitted).

A claim is based on an "indisputably meritless legal theory" when either the claim lacks an arguable basis in law, *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per curiam*), or a dispositive defense clearly exists on the face of the complaint, *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995).

In reviewing a complaint to determine whether it states a viable claim, the court "accept[s] as true all factual allegations in the complaint" and draws inferences from these allegations in the light most favorable to the plaintiff. *Cruz* v. *Gomez,* 202 F.3d 593, 596 (2d Cir. 2000) (citing *King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999)).  Dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is then only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cruz,* 202 F.3d  at 597 (citation and internal quotation marks omitted).  A district court is duty bound to dismiss the complaint upon reaching the conclusion that it fails to state a claim upon which relief may be granted.  *Id.* at 596  (§ 1915(e) provides that "dismissal for failure to state a claim is mandatory").[5]

Although detailed allegations are not required, "a complaint must contain sufficient factual

---

[5]  In addition, Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).   A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Twombly*, 550 U.S. at  555, 557).   Although courts still have an obligation to interpret "a pro se complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

### 2.       Factual Allegations

In the case at bar, the Plaintiff alleges that on January 26, 2015, at MacDougall-Walker Correctional Institution ("MWCI"), he and approximately thirty (30) inmates who were confined in the Security Risk Group ("SRG") housing unit covered their cell windows as a protest to their conditions of confinement.  Doc. 10-1, ¶¶ 10-11.  On January 27, 2015, the Plaintiff sent a letter to Captain  Rivera and Warden Chapdelaine complaining about the mistreatment and mismanagement of inmates in the SRG housing unit. *Id.* ¶¶ 17-21. In the letter, the Plaintiff described himself and other inmates as "rebelling against [MWCI] staff officials' oppressive and abusive practices." *Id.*, ¶ 21. In his first claim, Plaintiff asserts that in retaliation for sending this letter and asserting his grievances about conditions in MWCI's SRG unit, defendants Rivera, Chapdelaine and Salius accused him of orchestrating the protest and issued an order that he be placed in the restrictive

housing unit at MWCI.  *Id.*, ¶¶ 24, 31.  Defendants Rivera, Chapdelaine, Salius, together with

defendants Milling, Griggs, Quiros, Semple and Rinaldi, were then involved in facilitating Plaintiff's

transfer to Northern Correctional Institution ("NCI") on or about January 29, 2015, to be placed in

the administrative segregation phase program.  *Id.*, ¶¶ 32-36.  Plaintiff claims that the actions of

these Defendants were taken in retaliation for his complaints/grievances asserted on January 27,

2015.  *Id.*, ¶ 38.  On or about January 30, 2015, defendant District Administrator Quiros approved

Plaintiff's transfer to the NCI segregated program.  *Id.*, ¶ 50.  On that date, Plaintiff was transferred

to the NCI administrative segregation program, phase one.[6]  *Id.*, ¶ 53.

The Plaintiff also asserts that on January 29, he "filed a CT DOC Complaint with defendant

Rivera for the return of [his] legal correspondences [sic]."  *Id.*, ¶ 54.  Thereafter, on January 30,

2015, defendant Rivera destroyed some of Plaintiff's legal correspondence "in retaliation for his

complaint on January 27, 2015, alleging staff misconduct." *Id.*, ¶ 57.   According to Plaintiff,

defendant Quiros subsequently approved of defendant Rivera's retaliatory conduct of destroying

Plaintiff's mail.  *Id.,* ¶ 58.

On February 20, 2015, the Plaintiff received notice that an  administrative hearing would be

held on March 2, 2015 to determine whether Plaintiff would remain in administrative segregation.

*Id.,* ¶ 80.  The hearing was actually held on March 3, 2015, at which time Plaintiff participated to

defend himself from the charges that had placed him in such segregation.  Defendant Bachan, whom

---

[6]  The Court takes judicial notice that administrative segregation is defined as "[p]lacement
of an inmate on a restrictive housing status . . . [because] the inmate['s] . . . behavior or management
factors pose a threat to the security of the facility or a risk to the safety of staff or other inmates and
. . . the inmate can no longer be safely managed in general population."  State of Connecticut
Department of Correction, Administrative Directive 9.4(3)(B).  The prison's Unit Administrator may
order an inmate's placement in administrative segregation by completing the proper form and "stating
the specific reasons for placement."  *Id.* 9.4(9)(A).

Plaintiff had chosen as his "inmate advocate" to help him "prepar[e] a meaningful defense," was allegedly ineffective as advocate in that she failed to adequately prepare for the hearing and "stayed silent" when the hearing took place. *Id.*, ¶¶ 85, 87-89, 92, 94.

At the conclusion of the hearing, defendant Griggs, who acted as the hearing officer, recommended that Plaintiff continue to be placed in administrative segregation. *Id.*, ¶ 103. In March 2015, defendant Milling, interim Director of Offender Classifications and Population Management ("OCPM"), approved the recommendation, thereby maintaining Plaintiff's placement on administrative segregation status. *Id.*, ¶ 112. On March 15, 2015, Plaintiff submitted an appeal regarding his segregated status. *Id.*, ¶ 119. On May 20, 2015, defendant DOC Deputy Commissioner Rinaldi denied Plaintiff's appeal. *Id.*, ¶ 121. Plaintiff alleges that defendants Griggs, Rinaldi, Quiros, Bachan and Milling each denied him due process in connection with his placement in the administrative segregation program.

Furthermore, Plaintiff alleges that during the many months of his placement in administrative segregation, defendants Robles, Bachan and Cournoyer have violated his due process rights by failing to engage in the necessary periodic reviews of his status. *Id.*, ¶¶ 124-130. Moreover, defendant Deputy Commissioner Rinaldi, in particular, has failed to remedy the situation after Plaintiff sent her written complaints. Specifically, she has "denied [his] request for investigation" of matter. *Id.*, ¶ 130.

In his prayer for relief, Plaintiff seeks a jury trial on all of his claims; a declaratory judgment that his rights have been violated "as proven at trial," injunctive relief, removing him from administrative segregation; and monetary damages (including punitive, nominal, compensatory, costs and attorney's fees). *Id.*, at 32 ("Relief Requested").

10

### 3.   **Legal Analysis**

#### a.   **Section 1983 Claims**

In his Amended Complaint, Plaintiff asserts three general claims, all allegedly arising under § 1983: (1) "retaliatory transfer and placement in NCI - administrative segregation phase program;" (2) "violation of procedural due process regarding [his] placement in the NCI - administrative segregation phase program;" and (3) "failure to conduct periodic reviews of Plaintiff's administrative segregation confinement in violation of the due process clause."  Doc. 10-1, at 4, 15, 30.

With respect to claim one, Plaintiff alleges that he was transferred and placed in the administrative segregation phase program in retaliation for reporting the misconduct of DOC employees in MWCI's SRG unit to  defendants Chapdelaine and Rivera.  Specifically, Plaintiff alleges that MWCI Warden Chapdelaine and SRG Manager Rivera ignored Plaintiff's communications regarding the "non-stop mistreatment and mismanagement" of the SRG inmates. *Id.*, ¶ 20.  Instead of responding positively to his complaints, these Defendants allegedly "accuse[d] Plaintiff of organizing or leading the January 26, 2015 incident." *Id.*, ¶ 24. Plaintiff further alleges that defendant Captain Salius, first shift commander and responding supervisor at MWCI during the January 26 incident,  allegedly "confiscated the rough draft notes . . . to Defendants Rivera and Chapdelaine" regarding the January 26 incident. *Id.*, ¶ 36.  Plaintiff also states that he heard Chapdelaine say that Plaintiff was placed in administrative segregation because "he should learn how to stop being so vocal and writing things," referring to Plaintiff's complaints submitted on January 27, 2015.  *Id.*, ¶ 38.

Thereafter, defendant Milling, the interim director of OCPM, allegedly mishandled her duty under CT DOC  regulations (Rules 9.2 & 9.4) to make the determination as to whether Plaintiff

should be placed in NCI's administrative segregation unit "after notice and a hearing." *Id.*, ¶ 40. Plaintiff alleges that MWCI Warden Chapdelaine misinformed the OCPM that Plaintiff instigated the January 26 incident when prisoners protested their conditions by covering their cell windows. By letter, Chapdelaine allegedly informed Milling that Plaintiff was "an active SRG member of the Bloods [a reputedly violent gang] and was one of several inmates who [were] involved in an organized disturbance in Phase 1 of the SRG Program." *Id.*, ¶ 46. Chapdelaine also wrote that "Plaintiff played an integral role in organizing the incident by encouraging other members of the SRG Bloods to cover their windows and join in on the disruption." *Id.*, ¶ 47. Thereafter, DOC District Administrator Quiros transferred Plaintiff to NCI's administrative segregation program. *Id.*, ¶ 49. Rivera allegedly destroyed Plaintiff's legal mail rather than returning it to him, and Quiros approved the destruction. *Id.*, ¶¶ 55-58.

In essence, in this first claim, Plaintiff seeks to recover for his unlawful placement in the NCI administrative segregation program, due to alleged retaliation for complaints he made to Rivera and Chapdelaine on January 27, 2015, regarding mistreatment and mismanagement of inmates in the SRG housing unit. Falsely accusing an inmate of misconduct does not itself violate the Constitution. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997). However, a false misbehavior report may violate the Constitution when it is filed in retaliation against a prisoner for exercising a constitutional right. *Id. See also Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (plaintiff inmate's allegations that he had "sought relief in the courts on two occasions, and that the defendant prison officials retaliated against him for that reason, is sufficient to bring his claim within the purview of § 1983.").

Furthermore, in *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988), the Second Circuit held that where state prison official intentionally falsified disciplinary charges against an inmate in

retaliation for his cooperation with a state administrative investigation of alleged incidents of inmate abuse at the prison, such retaliation stated a claim under 42 U.S.C. § 1983.   Although the particular allegations did *not* directly implicate the inmate's right of access to the courts or a judicial forum, they nonetheless "implicate[d] his broader right to petition government for redress of grievances, as guaranteed by the First and Fourteenth Amendments."   854 F.2d at 589 (citation omitted).   In so holding, the Second Circuit stated that "[i]n the prison context, we have held that inmates must be permitted free and uninhibited access ... to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers."   *Id*. (citing *Sostre v. McGinnis*, 442 F.2d 178, 200 (2d Cir.1971) (*en banc*), *cert. denied*, 404 U.S. 1049 (1972)) (internal quotation marks omitted).   Therefore, "[i]f Franco c[ould] prove his allegation that he was subjected to false disciplinary charges and subsequent punishment for his cooperation with [a state administrative] inquiry, he [would be] entitled to relief under section 1983."   *Id.* at 590.

In the case at bar, Plaintiff alleges that various Defendants, and particularly MWCI Warden Chapdelaine, wrongfully accused him of instigating the January 26, 2015 incident at MWCI. Moreover, such accusations were made for the purpose of getting Plaintiff transferred to NCI's administrative segregation unit. Plaintiff claims that such retaliation stemmed from his prior January 27 complaints to DOC officials – Chapdelaine and Rivera – regarding abuse of SRG inmates by DOC employees at MWCI.[7]   He allegedly made such complaints to seek redress from the abuse. Under these circumstances, Plaintiff has stated a plausible claim for relief for retaliation for exercise

---

[7]  As further evidence of retaliation, Plaintiff alleges that the "other twenty (20 ) inmates who covered their cell door windows" but then "became compliant with staff officials['] direction to remove the covering after the deployment of chemical agent into their cell[s] was [sic] not transferred to NCI and placed on [administrative segregation]." Doc. 10-1, ¶ 16.

of his First Amendment rights under 42 U.S.C. § 1983.

In his second claim, Plaintiff alleges that his due process rights were violated when he was officially transferred to the NCI administrative segregation unit. In support, he argues that Connecticut DOC prison regulations mandated that he be given a proper hearing prior to said transfer. Moreover, even though he eventually received a hearing, he describes many alleged irregularities with respect to the proceedings at the hearing. For example, Plaintiff alleges that during conversations with defendant hearing officer Griggs prior to the hearing, Griggs revealed "hostility towards Plaintiff" due to Plaintiff's written request to the DOC that "someone other that Defendant Griggs" conduct Plaintiff's hearing. Doc. 10-1, ¶ 78. Plaintiff also alleges that on February 19, 2015, he received late notice that his hearing would occur on March 2, so that he had only eleven days to prepare. *Id.*, ¶ 81. Furthermore, defendant Bachan, Plaintiff's "inmate advocate," allegedly provided "ineffective assistance" of counsel in preparing and presenting Plaintiff's defense. *Id.*, ¶¶ 85-89. In fact, according to Plaintiff, Bachan "said nothing" at all to defend Plaintiff at his hearing. *Id.*, ¶ 94. Plaintiff, in representing himself, then presented his retaliation claims to Griggs, who promptly discounted them. Therefore, according to Plaintiff, Griggs "had no reliable or credible evidence to support his recommendation for [administrative segregation] placement." *Id.*, ¶ 104. Instead, Griggs relied on Chapdelaine's letter to Quiros regarding the January 26 incident; and that letter had not been "made available to the Plaintiff prior to or during the hearing." *Id.*, ¶ 105.

Defendant alleges that after the hearing, he requested and was denied a hold on all documentation created by DOC personnel regarding his placement at NCI; he was thus unable to review the relevant documents regarding the decision to transfer him. *Id.*, ¶ 110. Furthermore, Plaintiff claims that he was treated improperly during the appeal process. His transfer was belatedly

14

upheld "without any consideration or mention[ ] of any of the grounds for [sic] which [his] appeal was based." *Id.*, ¶ 122.  Defendant Deputy Commissioner Rinaldi, who learned that his appeal was based on alleged retaliation, "failed to investigate and remedy the wrong." *Id.*, ¶ 123.

Upon review of these allegations, the Court finds that, in addition to the particular hearing irregularities Plaintiff cites – which may or may not provide independent viable bases for relief – Plaintiff nonetheless states a plausible claim that he has been denied due process under § 1983.[8]  To constitute a deprivation of liberty under the Due Process Clause of the Fourteenth Amendment, a restraint must have imposed an "atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The Court finds that a fact-determinative review of Plaintiff's allegations reveals he has suffered such a hardship.

In particular, the Second Circuit has held that "[a] prisoner's liberty interest is implicated by prison discipline, such as SHU [Special Housing Unit] confinement, . . . if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin,* 515 U.S. at  484); *see also  Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (*per curiam*).  Moreover, the Second Circuit "read[s] *Sandin* to require that [the court] look to actual punishment in making this

---

[8]  The Court notes that at least one of Plaintiff's allegations regarding hearing irregularities fails to support his due process claim.  Pursuant to State of Connecticut Department of Correction, Administrative Directive 9.4(12)(A):  "A written notice of the hearing [pertaining to administrative segregation] and the reasons for the hearing shall be given to the inmate a minimum of two (2) business days prior to the hearing."  Plaintiff received eleven days of notice, which was more than sufficient under the directive.

With respect to his other factual allegations, however, the Court must accept them as true for purposes of screening his Amended Complaint to determine whether he has stated a claim upon which relief may be granted.

determination." *Palmer*, 364 F.3d at 64 (citing *Scott v. Albury*, 156 F.3d 283, 287 (2d Cir. 1998));

*see also Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997) (mandating that "in order to determine

whether a prisoner has a liberty interest in avoiding disciplinary confinement, a court must examine

the specific circumstances of the punishment.").

Factors relevant to determining whether a plaintiff has endured "an atypical and significant

hardship" include "the extent to which the conditions of the disciplinary segregation differ from other

routine prison conditions" and "the duration of the disciplinary segregation imposed compared to

discretionary confinement." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir.1998).   "Both the

conditions and their duration must be considered, since especially harsh conditions endured for a

brief interval and somewhat harsh conditions endured for a prolonged interval might both be

atypical.'" *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir.1999) (citation omitted).

Examining the case at bar, Plaintiff has provided a lengthy list of ways in which his

conditions in segregation differ from those of the general prison population.[9]   Such conditions

---

[9] With respect to conditions of his administrative segregation, Plaintiff asserts that he is (1) required to shower only three (3) times per week in a secured area in leg restraints; (2) denied all work, educational, and vocational opportunities; (3) denied television and an AM/FM Walkman with headphones; (4) denied clothing items "normally allowed to inmates in [the] general [prison] population;" (5) permitted one hour on five days per week of outdoor exercise; (6) denied all recreation opportunities; (7) forced to remain in his cell 23-24 hours of the day; (8) denied participation in congregated religious services; (9)  denied private mental health and medical sessions with trained professionals; (10) denied private counseling sessions; (11) permitted to clean his cell only one day of the week and is otherwise forced to remain in a "dirty" and "unsanitary housing cell;" (12) denied job credits; and (13) denied the opportunity to earn "good time" or "risk reduction" earned credits that would shorten his sentence of incarceration.  Doc. 10-1, ¶ 60.

In addition, while placed in such segregation, Plaintiff alleges that he has been treated brutally by various Corrections Officers ("deprived of State issued meals," "stabbed twice in his right arm," physically and sexually assaulted, and "harrassed [sic], threatened, frustrated [and] vexed"). *Id.*, ¶ 116.

include, *inter alia*, isolation in his cell for 23 hours per day; lack of adequate exercise; denial of access to private mental health and medical appointments; inability to achieve personal cleanliness and/or to maintain his cell in a sanitary condition;   clothing restrictions; and lack of access to religious gatherings and educational, vocational, and recreations opportunities.  With respect to the length of his sentence, Plaintiff asserts that he has been denied the opportunity to earn "good time" or "risk reduction" credits so that he may not act to shorten his sentence during incarceration.

As to the length of his segregation, on January 30, 2015, Plaintiff was first placed in NCI's administrative segregation unit.  Doc. 10-1, ¶ 53.  Then, "[o]n March 11, 2015, Defendant Lynn Milling adopted Defendant Griggs['s] recommendation and [continued his] place[ment] . . . on administrative segregation status."  Doc. 10-1, ¶ 112.  Since January 30, 2015, 370 days have expired; and since the official March 11th date,  330 days have expired.  The Second Circuit has indicated that, although there is no bright-line rule regarding the length of segregation to implicate due process, "[c]onfinement in normal SHU [segregated housing unit] conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*."  *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).  *See also Fludd v. Fischer*, 568 F. App'x 70, 72 (2d Cir. 2014) ("even under 'normal' conditions, solitary confinement for 305 days constitutes 'a sufficient departure from the ordinary incidents of prison life to require due process protections.'") (quoting *Colon*, 215 F.3d at 230).

Upon review of Plaintiff's  allegations, the Court finds that he has  stated a plausible claim that he has been deprived of liberty in violation of due process under § 1983. The restraint he has allegedly endured  plausibly imposed an "atypical and significant hardship in relation to the ordinary incidents of prison life," *Sandin* 515 U.S. at 484.   Plaintiff has alleged a list of the difficult

conditions he has been forced to suffer during segregation.[10]  Moreover, he has  remained in such

segregation for approximately one year.[11]  He alleges that his status was designated due to retaliation

and subsequently maintained without periodic review, due to his prior complaints to DOC officials

about DOC employees' improper treatment of SRG inmates.  This claim will be allowed to proceed.

Finally, in claim three, Plaintiff alleges that he has been denied the protection of requisite

prison policy safeguards of follow-up review or investigation.  Specifically, according to Plaintiff,

defendants, Cournoyer, Bachan, and Robles – all members of NCI's Inmate Classification Committee

–  have failed to follow the DOC rules, regulations and policies that mandate periodic reviews of

Plaintiff's administrative segregation confinement.[12]  Doc. 10-1, ¶ 126.  In addition, Plaintiff alleges

---

[10]  As the Second Circuit stated in *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000):

> It may be that discovery will reveal that such conditions were not imposed or that
> they were not atypical; but we cannot say that the complaint itself shows that
> [Plaintiff]  can prove no set of facts that would entitle him to relief.

[11]Furthermore, it appears that Plaintiff has exhausted his administrative remedies regarding his placement in administrative segregation because he appealed that decision, with an unsuccessful result.  Such exhaustion is mandated by the Prison Litigation Reform Act ("PLRA"), which provides that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2001).  Plaintiff's allegations suggest that he has fulfilled this exhaustion requirement.

[12]  The Court notes that Plaintiff cites an Exhibit "B" (Doc. 10-1, ¶ 125) which he describes as "CT DOC ADM. Dir. 9.4 Attachment," which charges prison officials to conduct "periodic reviews for the determination of continued [administrative segregation] confinements." Plaintiff has failed to file this attachment and/or to cite a particular provision.  He may do so, however, to present the text of this regulation in later proceedings.  Moreover, the Court takes judicial notice that the Directive Plaintiff cites (9.4) does, in fact, discuss mandatory "periodic assessment" of inmates on restrictive housing status; and an Attachment B to that directive mandates review of "Administrative Segregation" inmates at Northern as follows: "Classification staff every seven (7) days for the first two (2) months and every 30 days thereafter and by a mental health professional after 30 days and every three (3) months following." *See* Connecticut State DOC Administrative Directive 9.4(16)(A) ("Periodic Assessment"); Connecticut DOC "Restrictive Housing Status Matrix" (Attachment B to

that he has sent requests to Defendant Deputy Commissioner Rinaldi, requesting a "periodic review" or investigation of his confinement, but Rinaldi has denied all such requests. *Id.*, ¶ 129.   Plaintiff alleges that the failure to review or investigate his confinement, in violation of state DOC Administrative Directive, violates his right to due process.

The Second Circuit has stated that "at some point a prisoner confined in administrative segregation must have his status examined by the prison authorities and be accorded some sort of hearing as to the grounds for his continued confinement." *Wright v. Smith*, 21 F.3d 496, 500 (2d Cir. 1994).  Plaintiff did have a hearing prior to his placement on segregated status in March of 2015. However, almost a year has gone by so that a follow-up or periodic review, especially one allegedly mandated by state DOC directives, seems plausibly in order.  In other words, once an inmate's segregated confinement goes well beyond a state-regulated period for a mandatory  review, a protected liberty interest may have  been impaired.  *Id.*

Construing Plaintiff's Amended Complaint broadly, and interpreting the allegations to raise the strongest arguments that they suggest, Plaintiff's Amended Complaint contains sufficient factual matter, accepted as true," to state § 1983 claims that are "plausible on [their]  face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore,  upon initial review,   Plaintiff's Amended  Complaint  is not "frivolous"  under  28 U.S.C. § 1915(e)(2)(B)(i)-(ii) and  will be accepted by the Court.  The Court will next examine the forms of relief Plaintiff may pursue against these individual defendants.

--------

Administrative Directive 9.4).

b.   **Forms of Relief**

1.   **Individuals in Official Capacities**

To the extent the Plaintiff seeks monetary damages against the Defendants in their official capacities as DOC employees and officials, the claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). When a suit against a state official in his or her *official* capacity seeks *money damages*, the state is deemed to be the real party in interest because an award of damages would be paid from the state treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994). Under such circumstances, a lawsuit is deemed to be against the State so that the State official is entitled to Eleventh Amendment immunity. *See, e.g.*, *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986).

In contrast, Plaintiff may sue the individual Defendants for injunctive relief with respect to actions taken in their official capacities. *See, e.g., In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (under the "well-established" exception to Eleventh Amendment immunity, set forth in *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity – notwithstanding the Eleventh Amendment – for prospective, injunctive relief from violations of federal law") (citations and internal quotation marks omitted). In the case at bar, Plaintiff seeks injunctive relief with respect to his confinement in the administrative segregation program.

2.   **Individuals in their Individual Capacities**

Finally, regarding the issue of whether Plaintiff is attempting to "seek[] monetary relief from a defendant who is immune from such relief," 28 U.S.C. § 1915A(b)(2), there is no Eleventh Amendment bar to Plaintiff's § 1983 claims brought against the state official Defendants in their

*individual* capacities. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). *See also*

*Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974) (Eleventh Amendment does not bar award of damages

to be paid from the official's personal funds). "[S]tate officials, sued in their *individual* capacities,

are 'persons' within the meaning of § 1983." *Hafer v. Melo*, 502 U.S. 21, 31 (1991) (emphasis

added).

### III.   CONCLUSION AND ORDERS

The Court concludes that, pursuant to 42 U.S.C. § 1983,  the Plaintiff has stated plausible

claims against Defendants for:   retaliation in  violation of his First and Fourteenth Amendment

rights to seek redress of grievances against state officers; and denial of due process"for failure [of

Defendants] to afford him [proper] procedural process[ ] with [respect to] his transfer, placement,

and continued confinement in [administrative segregation] without periodic reviews."[13]  Doc. 10-1,

at 2.  As to the latter claim, Plaintiff has also pled a plausible "due process" claim for an  "atypical

and significant hardship in relation to the ordinary incidents of prison life," *Sandin* 515 U.S. at 484.

Plaintiff may sue the Defendants in their official capacities for prospective, injunctive relief and in

their individual capacities for monetary relief.  He may not sue the Defendants in their official

capacities for monetary relief.

The Court enters the following ORDERS:

(1)     Plaintiff's Motion for Leave to File an Amended Complaint [Doc. 10] is GRANTED.

The Clerk shall docket the Amended Complaint.  Because the Court has completed its review of the

---

[13]  Plaintiff brings his retaliation claim specifically against defendants Chapdelaine, Rivera, Salius, Griggs, Milling, Quiros, Semple, and Rinaldi.  Doc. 10-1, at 2 and ¶¶ 32-36.  He brings his due process claims against all Defendants.  Doc. 10-1, at 2.

newly operative Amended Complaint under 28 U.S.C. § 1915A, the Motions for Emergency Relief [Docs. 9, 11, 12] seeking review of the Complaint and Amended Complaint are DENIED as moot. The claims against all Defendants in their official capacities for money damages are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(2). The claims of retaliation and due process will proceed against Defendants in their official capacities for injunctive relief and their individual capacities for monetary damages.

(2)     Within twenty-one (21) days following entry of this Order, the U.S. Marshals Service shall serve the summons, a copy of the Amended Complaint and this Order on the Defendants in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3)     Within twenty-one (21) days following entry of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Commissioner Scott Semple, District Administrator Angel Quiros, Deputy Commissioner Monica Rinaldi, Warden Ann Cournoyer, Warden Carol Chapdelaine, Captain Scott Salius, Captain Robles, Captain Jose Rivera, Counselor Supervisor Griggs, Director of Offender Classification Lynn Milling and Advocate Jacqueline Bachan and mail a waiver of service of process request packet to each Defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of all the requests. If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that particular Defendant shall be required to pay the costs of such service in accordance with Federal Rule 4(d) of Civil Procedure.

(4)     Defendants shall file their response to the Amended Complaint, either an answer or

motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms is mailed to them.  If the Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this Order.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

It is SO ORDERED.

Dated: New Haven, Connecticut
       February 10, 2016

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge

23