UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IRA ALSTON,<br><br>            Plaintiff,<br>   v.<br><br>CAROL CHAPDELAINE, JOSE RIVERA, SCOTT SALIUS, LYNN MILLING, ANGEL QUIROS, C.S.B. GRIGGS, MONICA RINALDI, SCOTT SEMPLE, JACQUELINE BACHAN, CAPTAIN ROBLES, and ANNE COURNOYER, in their individual and official capacities,<br><br>            Defendants. | Civil Action No.<br>3:15 - CV - 434 (CSH)<br><br><br><br>MARCH 15, 2016 |

## MEMORANDUM AND ORDER

**HAIGHT, Senior District Judge:**

    Plaintiff Ira Alston, appearing *pro se*, is a State of Connecticut prisoner housed at Northern Correctional Institution ("NCI") in Somers, Connecticut. Alston was convicted of manslaughter after a jury trial in Connecticut Superior Court. He was sentenced to a total effective term of thirty-five years imprisonment. Alston's conviction was affirmed by the Supreme Court of Connecticut on direct appeal. 272 Conn. 432 (2005). His estimated release date is December 2035.

    In this civil rights action under 42 U.S.C. § 1983 before this Court, Alston claims that the circumstances of his incarceration at NCI violate his rights under the United States Constitution. The case falls within § 1983 because the defendants are employees of the Connecticut Department of Correction ("D.O.C.") whose actions with respect to Alston were taken under color of state law.

1

Alston is presently housed in the Administrative Segregation unit at NCI. This is a restrictive unit. Alston was transferred to NCI by D.O.C. officials in January 2015 and placed in administrative segregation, where he has been ever since. Alston had previously been housed in a Security Risk Group ("S.R.G.") unit at the MacDougall-Walker Correctional Institute (MWCI").

Alston's amended complaint [Doc. 10-1], the operative pleading, alleges in its first paragraph that the named D.O.C. defendants

> violated his First and Fourteenth Amendment rights to the U.S. Constitution when they transferred and placed plaintiff on Adm. Seg. in retaliation for plaintiff having filed legitimate complaints. Plaintiff also allege[s] a Due Process claim against all the defendants for failing to afford him with adequate procedural processes in connection with his transfer, placement and continued confinement on Adm. Seg. without periodic reviews.

Thereafter, Alston filed a motion [Doc. 14] for a temporary restraining order ("TRO") and/or a preliminary injunction. The injunctive relief prayed for is that the defendants be enjoined

> from continuing to retaliate against the plaintiff by his prolong [*sic*] administrative segregation confinement without any reviews geared towards determining the appropriateness of the administrative segregation confinement.

Doc. 14-3, at 4. Alston also moved for a temporary restraining order "effective immediately and pending the hearing and determination of this matter," which if granted would direct defendants "to arrange and cause the plaintiff to be transferred to general population." *Id.*

The Court denied plaintiff's motion for a TRO and scheduled his motion for a preliminary injunction for an expedited evidentiary hearing. That hearing extended over several days in the New Haven courthouse. Alston conducted the hearing *pro se*. He had to be transported each day to and from the Northern facility, presumably so named because Somers is situated to the north of Hartford,

close to the Massachusetts border.  Defendants were represented by a Connecticut Assistant Attorney General stationed in Hartford.

Both sides rested at the conclusion of the morning session on March 10, 2015, subject only to the question of whether the Court should enlarge the testimonial record in two respects.  Having considered the matter, I now decline to do so.  First, the two inmates Alston says may have overheard a conversation between Alston and MWCI Warden Chapdelaine have since been released from state confinement and control.  Second, the NCI psychologist, Dr. Frayne, gave direct testimony as a witness called by the defendants, but that testimony is not relevant to the issues as they have developed on Alston's motion for a preliminary injunction, and the Court will not consider this testimony in resolving that motion.[1]  Accordingly there is no need to recall Dr. Frayne for cross-examination by Alston on this motion.

The Court will require two additional submissions by defendants before this motion is decided.  Before I come to them, an additional observation should be made.

During colloquy at the end of the March 10 session, counsel for the D.O.C. defendants seemed to argue that the motion hearing had been unnecessarily extended by the taking of evidence on Alston's retaliation claim, which counsel suggested was not relevant to whether the requested preliminary injunction should issue.  It is puzzling if counsel does indeed make that contention, since the same able and experienced AAG represented Connecticut Department of Corrections defendants in the strikingly similar case of *Lopez v. McEwan, et al.*, No. 3:08-cv-678 (JCH), 2010 WL 326206 (D.Conn. Jan. 22, 2010).

---

[1] Dr. Frayne's testimony addressed issues which would be relevant to a claim that Alston might assert later in the litigation, for money damages for physical or psychological harm caused by what Alston says was his wrongful transfer from MacDougall-Walker to Northern.

*Lopez* was a § 1983 action in which the *pro se* plaintiff, an inmate at NCI, was initially housed "in Closed Custody in the 2-East Unit at NCI, on single-cell, recreation-only, status with some personal property privileges." 2010 WL 326206, at *1. "On Friday, March 7, 2008, Lopez was moved to Phase 1 of Administrative Segregation in Unit 1-East." *Id*., at *4. Lopez resisted that move. He claimed that "his housing was moved because of the allegations he made regarding an improper relationship between defendant Tara McEwan" (a D.O.C. counselor) and another inmate. *Id.,* at *5. In his civil rights action:

> Plaintiff seeks a preliminary injunction against defendants, who are current and former employees of the Connecticut Department of Corrections, to prevent them from classifying the plaintiff to Administrative Segregation for engaging in protected activities. Specifically, plaintiff contends that in retaliation for alleging an improper relationship between an inmate and correctional counselor, he has been given false disciplinary tickets, placed indefinitely in administrative segregation, and deprived of opportunities to file grievances.

2010 WL 326206, at *1. Lopez sought "to preliminarily and permanently enjoin defendants from," *inter alia*, "[h]ousing plaintiff in administrative segregation." *Id*.

Lopez's situation mirrors that of Alston. Alston, like Lopez, claims that his transfer to administrative segregation by D.O.C. employees was in retaliation for Alston's protected activities. Alston, like Lopez, seeks a preliminary injunction taking him out of administrative segregation.

Lopez's case was assigned to District Judge Hall, who referred Lopez's preliminary injunction motion to Magistrate Judge Fitzsimmons for a recommended ruling. Judge Fitzsimmons conducted an evidentiary hearing, and thereafter, in a careful and well-reasoned recommended ruling (which later became the law of the case) denied Lopez's request for a preliminary injunction. During the course of her opinion, Judge Fitzsimmons said this:

4

> Plaintiff contends that he was wrongly placed in Administrative Segregation, maintaining that he was falsely charged in retaliation for reporting an inappropriate sexual relationship between a staff member and an inmate. Nevertheless, at the hearing, plaintiff admitted to the conduct that preceded the disciplinary reports, thereby undermining any claim that the disciplinary actions were retaliatory.

2010 WL 326206, at *9.

This quoted passage shows that before Judge Fitzsimmons decided to deny Lopez's motion for a preliminary injunction, she received and considered evidence on the issue of whether the D.O.C.'s transfer of Lopez into administrative segregation was retaliatory in nature. Under familiar principles, it could not have been otherwise. The core of Lopez's case was his claim of retaliation. To obtain a preliminary injunction, Lopez had to demonstrate a likelihood that he would succeed on that claim. Judge Fitzsimmons could not decide whether Lopez had done so without taking and considering evidence on the issue of retaliation *vel non*. She did so. The case at bar is the same. This Court cannot decide whether Alston has shown the likelihood of success on his retaliation claim without first taking and considering evidence about whether he was retaliated against. I took that evidence and will consider it. The hearing took as long as the justice of the cause required.

The additional submissions the Court requires from defendants do not relate to the retaliation claim, which alleges a violation of Alston's First Amendment rights. He also asserts a Procedural Due Process claim, which is grounded in what has come to be called (somewhat ironically) a prison inmate's "protected liberty interests," a concept limited to "freedom from restraint that 'imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001) (citing and quoting *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). That inquiry is fact-intensive. To further it, the Court directs the defendants to

5

submit written declarations which answer these questions:

1. What are the detailed conditions of, liberties granted, and restrictions imposed, upon inmates who are:

    (a) confined in the administrative segregation phase 1 unit at NCI?

    (b) confined in the SRG phase 1 unit at MWCI?

2. With respect to an inmate's ability to shorten his sentence through the vehicles of probation, parole, good time reduction, or any other means or allowances, is there a difference between confinement in the two units specified in Question 1, so that a transfer into administrative segregation from SRG housing "will inevitably affect the duration of his sentence?" *Sandin*, 515 U.S. at 487.

These questions are routinely considered in prisoner inmate due process clause cases of this nature. The hearing testimony contains some evidence on the points, but it is scattered, and it will be helpful to the Court to have the answers consolidated and summarized. Presumably the requested information is entirely contained in published regulations, so there should be no dispute. Copies of defendants' submissions will be served upon Alston, who can comment upon any inaccuracies he perceives. Defendants are directed to file these submissions on or before **March 28, 2016.** Otherwise, the record on the preliminary injunction motion is closed.

Plaintiff and defendants are directed to file main written briefs within three weeks after both sides have received the transcripts of the hearings. If they wish, the parties may file a reply brief ten

(10) days after receiving the main brief.  If the Court desires oral argument, the parties will be advised by Chambers.

    The foregoing is SO ORDERED.

Dated:   New Haven, Connecticut
         March 15, 2016

                                        */s/Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge